UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES EDWARD PALMER,

                    Petitioner,

v.                                    Case No. 3:04-cv-1305-12HTS

JAMES R. MCDONOUGH,[1]
et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner Charles Edward Palmer, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on December 20, 2004. On June 13, 2005, Petitioner filed an Amended Petition (Doc. #12). Petitioner challenges a 1999 state court (Duval County, Florida) judgment of conviction for home invasion robbery

_____

[1] James R. McDonough, the Interim Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent.

on the following grounds: (1) ineffective assistance of counsel for failing to file a motion during the trial to recuse the trial judge; (2) ineffective assistance of counsel for failing to make a contemporaneous objection to a violation of Petitioner's right to remain silent; (3) ineffective assistance of counsel for failing to impeach the inconsistent identification statement of the State's key witness; (4) ineffective assistance of counsel for failing to request a voice line-up of Petitioner; (5) ineffective assistance of counsel for coercing Petitioner not to testify; (6) ineffective assistance of counsel for failing to object to the venire and request a new jury panel; (7) ineffective assistance of counsel for failing to object and move for a mistrial on the basis of highly prejudicial inadmissible evidence; (8) ineffective assistance of counsel for failing to object and move for a mistrial on the basis of a highly prejudicial discovery violation; (9) ineffective assistance of counsel for failing to object and move for a mistrial based on prejudicial and improper comments; (10) ineffective assistance of counsel for failing to file a motion to suppress hearsay, inadmissible evidence; and, (11) ineffective assistance of counsel for failing to object to hearsay evidence and an identification photograph.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #16) (hereinafter Response). In support of their

2

Response, they submitted exhibits.[2]   Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #7).  Petitioner has responded.  <u>See</u> Petitioner's Reply (Doc. #19).  This case is now ripe for review.

## II. Procedural History

On August 6, 1998, Petitioner Charles Edward Palmer was charged by Information with home invasion robbery.  Ex. A.   On February 5, 1999, after a jury found Petitioner guilty as charged, the trial court sentenced him to life imprisonment.  Ex. B; Ex. C; http://www.dc.state.fl.us/ActiveInmates (website for the Florida Department of Corrections, Corrections Offender Network); Ex. EE, Transcript of the Jury Trial (hereinafter Tr.).

On February 19, 1999, Petitioner appealed, raising the following claims:  (1) the trial court erred when it denied the defense the opportunity to present potentially exculpatory demonstrative evidence during its case in chief; (2) the trial court erred by denying the defense's motions for mistrial based on a comment by a police officer regarding Petitioner's right to remain silent, which deprived Petitioner of a fair trial; and, (3) Section 775.082 of the Florida Statutes, known as the Prison Releasee Reoffender law, is unconstitutional.  Ex. D; Ex. E.   The

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

appellate court per curiam affirmed on May 10, 2000, and the
mandate issued on May 26, 2000.  Palmer v. State, 757 So.2d 587
(Fla. 1st DCA 2000);[3] Ex. G; Ex. H.

On June 9, 2000, Petitioner, through counsel, filed a Notice
to Invoke Discretionary Jurisdiction, seeking the discretionary
jurisdiction of the Supreme Court of Florida to review the May 10,
2000, decision of the appellate court.  Ex. I; Ex. J, Petitioner's
Jurisdictional Brief.   In his brief, Petitioner argued that the
appellate court's decision expressly follows its earlier holdings
that the Prison Releaseee Reoffender Act is constitutional and
since that issue is pending discretionary review, the Supreme Court
of Florida should accept jurisdiction to ensure that this case will
be afforded the same treatment as the cases now before the Supreme
Court of Florida on the identical point of law.  Ex. J.

On January 23, 2001, the Supreme Court of Florida ordered
Petitioner to show cause "why this Court's decisions in Grant v.
State, 770 So.2d 655 (Fla. 2000), McKnight v. State, 769 So.2d 1039
(Fla. 2000), Ellis v. State, 762 So.2d 912 (Fla. 2000), and State

---

[3] The appellate court's opinion was a per curiam affirmance,
with citation to cases then pending before the Supreme Court of
Florida.  See Palmer v. State, 757 So.2d 587 (citing Chambers v.
State, 752 So.2d 64 (Fla. 1st DCA 2000); Turner v. State, 745 So.2d
351 (Fla. 1st DCA 1999), review granted, No. 96,631, -- So.2d --
(Fla. Feb. 3, 2000); Jackson v. State, 744 So.2d 466 (Fla. 1st DCA
1999), review granted, 749 So.2d 503 (Fla. 1999); Durden v. State,
743 So.2d 77 (Fla. 1st DCA 1999), review granted, 751 So.2d 1251
(Fla. 2000); Woods v. State, 740 So.2d 20 (Fla. 1st DCA), review
granted, 740 So.2d 529 (Fla. 1999)).

v. Cotton, 769 So.2d 345 (Fla. 2000), or any one of them, should not control the outcome of this case."[4]  Ex. K.  Further, the court ordered the State to file a reply.  Id.  Petitioner filed a Response to Order to Show Cause (Ex. L), and the State filed a Reply, acknowledging that the State had previously "agreed there was discretionary jurisdiction but urged the Court to stay proceedings pending the resolution of the rehearing motion in Woods."[5]  Ex. M at 1.  On June 21, 2001, the Supreme Court of Florida stated that, upon review of the responses to the Court's Order to Show Cause, it "has determined that it should decline to accept jurisdiction" and ordered that the petition for review be denied, citing Grant, 770 So.2d 655; Cotton, 769 So.2d 345; McKnight, 769 So.2d 1039; and, Ellis, 762 So.2d 912.  Palmer v. State, 791 So.2d 1100 (Fla. 2001); Ex. N.

On March 28, 2002, Petitioner filed a Motion to Correct Illegal Sentence pursuant to Fla. R. Crim. P. 3.800.  Ex. O.  The trial court denied the motion on July 16, 2002.  Ex. P.

On July 26, 2002, Petitioner filed his Motion for Post Conviction Relief pursuant to Fla. R. Crim. P. 3.850.  Ex. Q.  On

---

[4] These cases generally held that the Prison Releasee Reoffender Punishment Act is not unconstitutional in that it does not violate the single subject requirement of the state's Constitution, the equal protection clause, the ex post facto clause or separation of powers.

[5] Woods v. State, 740 So.2d 20 (Fla. 1st DCA 1999), review granted, 740 So.2d 529 (Fla. 1999), decision approved by State v. Cotton, 769 So.2d 345 (Fla. 2000).

March 28, 2003, Petitioner filed a copy of his motion.  On May 1, 2003, he filed an Amended Motion for Post Conviction Relief, raising the following claims: (1) ineffective assistance of counsel for failing to file a motion during trial to recuse the trial judge; (2) ineffectiveness for failing to object to a violation of his right to remain silent; (3) ineffectiveness for failing to file a motion to dismiss the legally insufficient charging document; (4) ineffectiveness for failing to have him present during the taking of the deposition; (5) ineffectiveness for failing to file a motion to suppress hearsay and an out of court identification; (6) ineffectiveness for failing to impeach the inconsistent identification statement of the State's key witness; (7) ineffectiveness for failing to request a voice line-up of Petitioner; (8) ineffectiveness for coercing Petitioner not to testify; (9) ineffectiveness for failing to object to highly prejudicial impermissible evidence; (10) ineffectiveness for failing to object to a highly prejudicial discovery violation; (11) ineffectiveness for failing to object to prejudicial improper statements and comments; (12) ineffectiveness for failing to object to the venire and request a new jury panel; (13) ineffectiveness for failing to object to hearsay inadmissible evidence; and, (14) ineffectiveness for failing to file a motion to suppress hearsay inadmissible evidence.  Ex. S.

On January 15, 2004, the trial court denied the motion as untimely, finding that "it was filed more than two years after Defendant's conviction became final," noting that his conviction and sentence were affirmed on appeal through a mandate issued on May 26, 2000, and citing cases that dictate that any Rule 3.850 motion must be filed two years from the date of the direct appeal mandate.   Ex. T (citations omitted).   On February 3, 2004, Petitioner's motion for rehearing or reconsideration was denied. Ex. U.

On appeal, Petitioner filed a *pro se* brief, arguing that the trial court erred in denying his Rule 3.850 motion as untimely based upon its finding that his motion was filed more than two years after his conviction and sentence became final.   Ex. W.   The State conceded that Petitioner was entitled to a remand to the trial court for reconsiderfbation of his motion "due to the fact that his timely filed notice to invoke discretionary jurisdiction to the Florida Supreme Court was from a PCA opinion which cited to a case then pending before that court" and since that court had jurisdiction, his conviction and sentence did not become final until that court disposed of the petition for review.   Ex. X at 5, 8, 9.   The appellate court per curiam affirmed on October 8, 2004, and the mandate issued on December 27, 2004.   <u>Palmer v. State</u>, 888 So.2d 25 (Fla. 1st DCA 2004); Ex. Y; Ex. Z.

Petitioner's Petition is timely filed within the one-year period of limitations. See Court's Order (Doc. #11) (concluding that Petitioner has timely filed his Petition in this Court).

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the

reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted).  If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few

and far between." <u>Waters v. Thomas</u>, 46 F.3d
1506, 1511 (11th Cir. 1995) (en banc) (quoting
<u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir.
1994)).

For assessing a lawyer's performance,
<u>Chandler v. United States</u>, 218 F.3d 1305 (11th
Cir. 2000) (en banc) <u>cert</u>. <u>denied</u>, 531 U.S.
1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001),
sets out the basic law:  "Courts must indulge
the   strong   presumption   that   counsel's
performance was reasonable and that counsel
made all significant decisions in the exercise
of reasonable professional judgment." <u>Id</u>. at
1314 (internal marks omitted). . . .  Our role
in reviewing an ineffective assistance claim
is not to "grade" a lawyer's performance;
instead, we determine only whether a lawyer's
performance was within "the wide range of
professionally competent assistance." <u>See</u>
<u>Strickland</u>, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has
provided effective assistance is an objective
one:  a petitioner must establish that no
objectively competent lawyer would have taken
the action that his lawyer did take." <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that  his  lawyer's  deficient  performance
prejudiced his case is also high.  "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding.  Virtually every
act or omission of counsel would meet that
test." <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. <u>See id</u>.
at 2068.[6]

---

[6] However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland, 466 U.S. 668, 687 (1984)).  In reviewing an ineffectiveness claim, this Court does not need to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Saldo v. Crosby, 162 Fed. Appx. 915, 916 (11th Cir. 2006) (citation omitted) (not selected for publication).

### V. Findings of Fact and Conclusions of Law

#### A. Procedural Default

Respondents contend that the claims are now procedurally barred since they were previously raised in Petitioner's Rule 3.830 motion, which was denied by the trial court as untimely filed more than two years after Defendant's conviction became final.  Response at 4-6; Ex. T.  As previously noted by this Court, since the Notice to Invoke Discretionary Jurisdiction was pending from June 9, 2000, until June 21, 2001, and since the Supreme Court of Florida had

---

outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

jurisdiction, his conviction and sentence did not become final until the Supreme Court of Florida disposed of the petition for review on June 21, 2001. See Court's Order (Doc. #11), filed May 18, 2005, at 7; Ex. X at 5, 8, 9. This Court is of the opinion that the claims are not procedurally barred and will therefore address the merits.

## B. Ground One

Petitioner claims that counsel was ineffective for failing to file a motion during the trial to recuse the trial judge. Specifically, Petitioner claims in pertinent part:

> The facts of the case alleged the Petitioner crawled through a bathroom window, in order to gain entry to a residence to commit a robbery, the defense presented the cardboard cutout that contained the same dimensions of the bathroom window, the defense wanted Petitioner to step through the cardboard opening to show that he in fact was too large to fit through the window and could not have committed the crime. The trial judge denied the demonstrative aid because, according to the judge it would be self serving . . . .

Amended Petition at 5-6. Petitioner contends that the trial judge crossed the bounds of neutrality when he, before the State raised an objection, declined to permit Petitioner to use the demonstrative aid because it involved a self-serving demonstration that would have misled the jury. Id.; see Tr. at 223-24, 231, 232-37. Thus, Petitioner argues that his trial counsel had grounds to

move to recuse the judge and the failure to do so constituted ineffective assistance of counsel.

Clearly, the trial judge has broad discretion to determine the admission of evidence. White v. State, 817 So.2d 799, 805-07 (Fla.), cert. denied, 537 U.S. 1091 (2002); Zack v. State, 753 So.2d 9, 16 (Fla. 2000). Based on the record before this Court, defense counsel did not have a good faith basis to move to recuse the trial judge because the judge was well within his discretion when he rejected the admission of evidence that would have unfairly prejudiced the State with a demonstration that could have misled the jury. Under Florida law, the standard for reviewing the legal sufficiency of a motion to disqualify is whether the facts alleged, which must be assumed to be true, would cause the movant to have a "well-founded fear that he would not receive a fair trial." Mansfield v. State, 911 So.2d 1160, 1171 (Fla. 2005). A mere subjective fear of bias will not be legally sufficient, but rather, the fear must be objectively reasonable. Id. (citations omitted). Petitioner cannot show that a motion for recusal would have been supported by a well-founded fear that he would not receive a fair trial from the assigned trial judge.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.

United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003)
(citations omitted).   Failure to raise a meritless claim is not
deficient performance.   Thus, given defense counsel's actions based
on the record before this Court, defense counsel's performance was
not deficient.

Moreover, defense counsel did move for a mistrial after the
trial judge denied the defense's request to use a demonstrative aid
to show that Petitioner could not fit through the window at issue.
Tr. at 235.   The trial court denied the motion for mistrial.   Id.
at 236.  Defense counsel exercised reasonable professional judgment
when she preserved for the record her objection to the court's
ruling and moved for a mistrial.

Even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown prejudice.   Petitioner has not
shown that a reasonable probability exists that the outcome of the
case would have been different if his lawyer had given the
assistance that Petitioner has alleged she should have provided.
This ineffectiveness claim is without merit.   See Response at 9-11.

### C. Ground Two

Petitioner claims counsel was ineffective for failing to make
a contemporaneous objection to a violation of Petitioner's right to
remain silent.   The comments at issue were made by Detective J.C.
Parrott in response to defense counsel's cross-examination

questions concerning Petitioner's demeanor at the time of the arrest.  The following colloquy ensued.

> [DEFENSE COUNSEL]: And when you went in to make the arrest everything was very easy, very calm, correct?
>
> [DETECTIVE PARROTT]: I walked up to him and I explained to him he was under arrest for robbery.  He didn't ask any questions.  He stood there and turned around and put his hands to me, and I handcuffed him and he never asked anything.
>
> [DEFENSE COUNSEL]: Gave you no problems?
>
> [DETECTIVE PARROTT]: No problems.  He never asked a question.

Tr. at 219. Petitioner claims that his rights were violated because, rather than objecting to the comment made by Detective Parrott, defense counsel continued questioning the witness. Amended Petition at 9.

Detective Parrott made brief comments that upon Petitioner's arrest, Petitioner did not ask any questions and did not give him any problems.  Considering the statements in context, Detective Parrott's responses were not elicited as comments on Petitioner's right to remain silent, but were intended to show that Petitioner was cooperative with police.  Tr. at 219.  Nonetheless, defense counsel did move for a mistrial, stating that Detective Parrott had commented on Petitioner's right to remain silent.  Id. at 226-28. The court denied the mistrial on the grounds that the statement was "somewhat responsive [to defense counsel's questions] and doesn't

15

really constitute a comment on his failure to or his right to invoke his constitutional protections against self-incrimination." Id. at 228.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d at 1319-20.  Thus, although defense counsel waited until after the completion of Detective Parrott's testimony to move for a mistrial, the issue was still brought before the court, the question and response was read back to the court, and the matter was ruled on by the trial judge at that time.  Tr. at 226-28.  Thus, given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

Even assuming <i>arguendo</i> deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. This ineffectiveness claim is without merit.  <u>See</u> Response at 11-12.

## D. Ground Three

Petitioner claims counsel was ineffective for failing to impeach the State's key witness (Lizzie Joyce Frazier) with prior inconsistent statements. Petitioner states that counsel should have realized that Ms. Frazier's testimony concerning the identity of the robber was not consistent with her prior statements. The record before this Court shows that defense counsel's cross-examination was well within the bounds of reasonable professional performance. Tr. at 139-51.

Defense counsel's cross-examination established that Ms. Frazier could not identify the robber's face and only recognized his voice. Id. at 143-44. Defense counsel elicited the following testimony from Ms. Frazier. Ms. Frazier confirmed that it was dark and stated that she saw a "silhouette" that was larger than she was. Id. at 143. Defense counsel continued to question her with respect to a description of the robber.

> [DEFENSE COUNSEL]: But you can't describe any facial features, didn't see hair, can't tell us anything about the clothes, anything like that?
>
> [MS. FRAZIER]: No, but his presence was over me and I knew his voice, his distinct voice.
>
> [DEFENSE COUNSEL]: Now the voice that you heard you said it sounded like he was trying to disguise his voice?
>
> [MS. FRAZIER]: A little, yes.

17

> [DEFENSE COUNSEL]: Okay, So it didn't sound like Charles' voice, it sounded like Charles trying to disguise his voice?
>
> [MS. FRAZIER]: Uh-huh.
>
> [DEFENSE COUNSEL]: And the disguising of the voice was -- it sounded like he was talking through clinched teeth, is that correct?
>
> [MS. FRAZIER]: Right, but he was saying it stronger. He talked through his teeth all the time but it's a soft voice. But he say [sic], shut up, trying to, you know, disguise it.

Id. at 143-44.

There is a strong presumption in favor of competence, and Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d at 1319-20. After reviewing both the direct examination and the cross-examination of the witness, there is nothing to suggest that defense counsel's performance was deficient.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. This ineffectiveness claim is without merit. See Response at 12-14.

### E. Ground Four

Petitioner claims counsel was ineffective for failing to request a voice line-up of Petitioner.   He argues that if the victims had participated in a voice line-up, they would <u>not</u> have identified him as the robber.   Petitioner's claim is without merit because his assertion that a voice line-up would have eliminated him as the robber is too speculative to show that his defense counsel's performance was deficient.

On direct-examination, Ms. Frazier testified that she knew Charles Palmer because he remodeled her house with her contractor for "approximately a month and a half," everyday except weekends. Tr. at 121-22.  With respect to the level of contact she had with Petitioner, she stated "he was all over the house" and she would see him in and out of the house because she was home every day while they were working.  <u>Id</u>. at 122.  She talked to him "quite often" during the course of the day.  <u>Id</u>. at 123.  On the night of the robbery, the robber stood over her, face to face, and she could see "the mass" of the person, and when he told her to shut up, she knew it was Petitioner Charles Palmer.  <u>Id</u>. at 128.  She knew it was Petitioner because he has a "distinct talk" because he talked through his teeth.  <u>Id</u>. at 128-29.  Both she and her daughter knew it was Petitioner.[7]  <u>Id</u>. at 134.

---

[7] Ms. Joyce (Ms. Frazier's daughter) testified that she recognized the robber to be Charles Palmer.  Tr. at 57-59, 70, 89-90, 96, 102.

Petitioner's trial counsel pursued a reasonable defense that challenged the witnesses' identification and lack of incriminating physical evidence. Id. at 247-69, 289-99. Petitioner has failed to show deficient performance by counsel since Ms. Frazier was so familiar with Petitioner's voice and had described it as "distinct." Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. This ineffectiveness claim is without merit. See Response at 14.

### F. Ground Five

Petitioner claims that counsel was ineffective for coercing Petitioner not to testify. The following colloquy took place at the trial to ensure that it was Petitioner's decision to not testify.

> [DEFENSE COUNSEL]: Judge, since you are not allowing me to put [on] my demonstration, I will not be calling any witnesses to save my second closing, and Mr. Palmer is not going to be testifying.
>
> THE COURT: Mr. Palmer, you wish not to testify then in your own defense?
>
> THE DEFENDANT: Yes, I wish not.
>
> THE COURT: You understand that the State has rested their case? They are not going to offer any more testimony.

At this time we will proceed with defense witnesses, and your attorney, Ms. Yazgi, has indicated that she has no other witnesses she will call at this time, as to my rulings as to the demonstrative aids that you are intending to offer and also indicating that you yourself do not wish to testify, is that correct?

THE DEFENDANT: Correct.

THE COURT: I want you to understand, certainly you should listen to your attorney, counseling with her, take her advice, but the decision of whether or not you wish to testify in your own trial is a decision that you and only you can make, understand?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, even if she told you to testify and she thought it was in your best interest to testify[,] you wouldn't be required to do so if you didn't want to do so.

And even if she has advised you not to testify, again, that's a decision you have to make. Understand?

THE DEFENDANT: Yes, sir.

THE COURT: And at this time it's your decision not to testify in your own defense?

THE DEFENDANT: Right.

THE COURT: Correct?  All right.

. . . .

[THE PROSECUTOR]: The State has four felony judgment[s] and sentences that we would have intended to ask this defendant about if he were to take the stand.

THE COURT: I would have gotten into that if he indicated he wished to testify, but it's not an issue at this point.

21

> [DEFENSE COUNSEL]: Can you tell Officer
> Alley he is excused and he can go home?
>
> THE COURT: All right.  We will proceed
> with the final arguments. . . .

Tr. at 236-28.

Petitioner, here, has not shown deficient performance by counsel.  By Petitioner's own admission, his waiver was knowingly and intelligently made without coercion.  Based on the record before this Court, it appears that counsel was concerned about Petitioner's "distinct" and familiar voice since his voice was the identifier to the victims.  Further, Petitioner did have four felony judgments and sentences that the State clearly intended to question Petitioner about if he had decided to take the stand.  And, finally, defense counsel's strategy was "to save [the] second closing" argument by not calling any witnesses.[8]  Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  This ineffectiveness claim is without merit.  See Response at 15.

---

[8] The trial judge explained to the jury that defense counsel would make the initial closing argument, the State would make the second argument, and defense counsel would close with a brief rebuttal argument.  Tr. at 246.

## G. Ground Six

Petitioner Palmer claims that counsel was ineffective for failing to object to the venire and for failing to request a new jury panel when the trial court did not swear the jury according to Fla. R. Crim. P. 3.300.[9]  As Respondents noted, in Florida, the practice of taking prospective jurors' oaths outside the courtroom is common.  See Martin v. State, 898 So.2d 1036 (Fla. 5th DCA) (stating "it is a common practice to obtain oaths from the venire outside the courtroom"), review denied, 911 So.2d 98 (Fla. 2005). Thus, in light of the common practice of taking jurors' oaths outside of the courtroom, "it is pure speculation on [Petitioner's] part to allege that they were never sworn."  Id. (footnote omitted).  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  See Lott v. State, 826 So.2d 457, 459 (Fla. 1st DCA 2002) (stating that the defendant had not claimed that "an unsworn juror provided false information and that the defendant would likely have prevailed at trial with a different juror"),

---

[9] Fla. R. Crim. P. 3.300(a) states:  "The prospective jurors shall be sworn collectively or individually, as the court may decide."  Pursuant to the rule, prospective jurors should swear or affirm that they will answer truthfully all questions directed to them.

review denied, 845 So.2d 891 (Fla. 2003).   This ineffectiveness
claim is without merit.   See Response at 15-16.

### H. Ground Seven

Petitioner claims that counsel was ineffective for failing to
object and move for a mistrial when Detective Parrott testified as
follows on direct examination.

> At 12:45, approximately, that same day,
> which was the 26th, **I obtained an arrest
> warrant** from here in the courthouse through
> the State Attorneys and the Judge here for the
> defendant, Charles Edward Palmer.
>
> . . . .
>
> I served the warrant the following Monday
> at approximately 2:30 in the afternoon, [and]
> arrested him.

Tr. at 210 (emphasis added).   Petitioner concludes that the
prejudice outweighed any potential probative value and bolstered
the victim's testimony.   Amended Petition at 24-25.

The detective's brief reference to the arrest warrant was not
so prejudicial that it affected Petitioner's right to a fair trial.
The admission of the detective's brief reference to the arrest
warrant was relevant and properly admitted because it explained the
detective's initial contact with Petitioner, and its use was
limited during the trial.   Petitioner has not shown deficient
performance by defense counsel.

Even assuming *arguendo* deficient performance by defense
counsel, Petitioner has not shown that a reasonable probability

24

exists that the outcome of the case would have been different if
his lawyer had given the assistance that Petitioner has alleged she
should have provided.   Two eyewitnesses had identified Petitioner
as the perpetrator of the robbery.   This ineffectiveness claim is
without merit.   See Response at 16-19.

### I. Ground Eight

Petitioner claims that counsel was ineffective for failing to
object and move for a mistrial on the basis of a highly prejudicial
discovery violation.   The prosecutor asked the following questions
on redirect examination, which elicited testimony from Ms. Frazier
(the victim).

> [THE PROSECUTOR]:   And were you present
> last night when Detective Parrott came by your
> home?
>
> [MS. FRAZIER]: Yes, I was.
>
> [THE PROSECUTOR]:   And did you watch
> Detective Parrott maneuver his body through
> the window?
>
> THE COURT: Ms. Haag [the prosecutor], I
> think this is outside of cross.
>
> [THE PROSECUTOR]: Yes, sir.   I have
> nothing further.

Tr. at 152.   The witness was then excused.

Petitioner contends that counsel should have objected on the
basis of a discovery violation since the detective's crawling
through the window was never disclosed to the defense.   Amended
Petition at 27.   The trial judge, on his own, interrupted the

testimony after the second question, noting it was "outside of cross." Tr. at 152.  Thus, the second question was never answered.

Petitioner has not shown deficient performance by counsel. And, even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  Petitioner's defense was not materially hindered by the alleged discovery violation.[10]  This ineffectiveness claim is without merit.  See Response at 19-20.

### J. Ground Nine

Petitioner claims that counsel was ineffective for failing to object and move for a mistrial based on prejudicial and improper comments by the trial judge and the prosecutor (during opening and closing arguments).  First, Petitioner claims that the below-quoted

---

[10] Petitioner's theory of defense was premised upon the claims that there was insufficient evidence to support the conviction where the eyewitnesses misidentified him and that Petitioner was not physically able to fit through the window to enter the victims' home.  There was testimony establishing the dimensions of the window and Petitioner's body measurements (5 feet, 9 inches; 210 pounds) at the time of the robbery.  Tr. at 106-07, 211-12, 220. Further, defense counsel objected when the prosecutor questioned Detective Parrott about his climbing through the window on the ground that it was irrelevant as to whether the detective could fit through the window versus Petitioner's ability to fit through the window.  Id. at 212-13.  After argument by counsel, the trial judge sustained defense counsel's objection, stating: "I think there are differences in the size of the detective and the defendant, and I think the probative value would be outweighed by the prejudice." Id. at 215.

comment by the trial judge was prejudicial and improper.  After the closing arguments by the attorneys, the trial judge spoke to the jury.

> At this time I would normally proceed with jury instructions, which take about 20 minutes, and you will be permitted to retire to commence your deliberation.
>
> It has gone on a little longer than I had anticipated.  I was hoping to be through around threeish.  I certainly want you to retire and deliberate, but the clock is, sort of, you are in charge of it.
>
> My question to you at this time, I have spoken to the attorneys and they are willing to stay if you wish to proceed and complete it today.  Or if you would like to recess at this time and come back in the morning, first thing, then I will instruct you and then you will be permitted to deliberate tomorrow.  **And we have another trial,** but we will arrange that.  That won't be a problem.

Tr. at 299-300 (emphasis added).

Counsel's performance was not deficient with respect to the trial judge's comment about "another trial" because, considering it in context, it clearly referred to a scheduling conflict.  Id. at 300.  Since Petitioner's trial counsel did not have grounds to object, the claim of deficient performance is unfounded.  And, even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  See Response at 21.

Petitioner also sets forth nine instances of alleged prosecutorial misconduct with respect to the following comments made during opening and closing arguments. During opening argument, the prosecutor stated:

> On June 25, 1998, at about 10:45 at night, **this defendant**, who was not unknown to the two women living in a home, **broke into that home and once inside that home, with a knife to the throat of one of those women, took money that did not belong to him.**
>
> . . . .
>
> That's why, ladies and gentlemen, **you will know at the end of this trial that this defendant is guilty of breaking into that home with the intent to steal money that he knew was there.**

Tr. at 17, 22-23 (emphasis added). Petitioner contends that these comments were improper since the prosecutor failed to preface the argument with the introductory phrase, "the evidence will show."

Further, during closing argument, the prosecutor stated:

> Desperate people do desperate things, and **what's interesting about this is Charles Palmer does not want to get caught so he does that. He leaves a footprint because arguably this is the kind of an entry that someone not familiar with a home or at least the insides of a home would do.**
>
> **He goes in the bathroom and, ladies and gentlemen, that is when he touches the bathtub.** I am not saying and the State is not saying he got out any particular way, **but that ladies and gentlemen, is when those prints were placed there.**

28

. . . .

**This defendant** does because he has been in there and he knows where these ladies stay, in which particular room, and he **comes in and he makes a beeline for mom's room.** Get down and shut up, and she folds into the closet.

. . . .

He worked for Mr. Parker when large sums of money came into [sic] Mr. Parker. He had watched the money come out of the room. **He was going to take advantage of it, so he dragged the daughter in there so he knows where both women are.**

. . . .

The dog hadn't barked yet, ferocious or not, but the child cries. But the child stops crying. Why? **Because I recognized Charles Palmer and I am not scared any more. I submit to you that that [sic] child, that three year old recognized a friendly face but was unsure about what was going on so he stops crying.**

. . . .

Give me the money. Not give me your jewelry. **People who break into homes don't go in and grab money and leave if you are going in for the big haul. Go in there and get jewelry off of both those ladies. Get money out of both of their rooms. Ask them where else do you keep money in this house. I want it. No. He went straight for mama and straight for the money.**

. . . .

**Ladies and gentlemen, the child recognized him. The dog recognized him. Look at the way he did this. This is not someone unfamiliar with the home.**

29

> . . . .
>
> In this case look simply at the evidence and
> the law and **convict the defendant, Charles
> Palmer, of what he committed and that is armed
> home invasion robbery.  And the weapon that he
> used was a knife capable of hurting very
> seriously.  It is not a simple weapon.  It is
> a deadly weapon.**  Thank you.

Id. at 272, 276, 278-79, 280, 282, 289 (emphasis added).
Petitioner contends that the cumulative effect of these comments
deprived him of a fair trial.  Amended Petition at 34.

Even assuming *arguendo* that the prosecutor's comments were
improper, the comments, when considered in the context of the
entire proceeding, did not in any way render the proceeding
fundamentally unfair.  There is no reasonable probability that the
comments changed the outcome of the case.  Cargill v. Turpin, 120
F.3d 1366, 1379 (11th Cir. 1997), cert. denied, 523 U.S. 1080
(1998); Sexton v. Howard, 55 F.3d 1557, 1559 (11th Cir. 1995)
(setting forth the two-prong test for prosecutorial misconduct:
that the conduct must be improper and the conduct must
prejudicially affect the substantial rights of the defendant in
that there is a reasonable probability that, but for the conduct,
the outcome of the trial would have been different), cert. denied,
516 U.S. 1124 (1996).

In evaluating the performance prong of the Strickland
ineffectiveness inquiry, there is a strong presumption in favor of
competence.  Given defense counsel's actions based on the record

before this Court, defense counsel's performance was not deficient. Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.

The trial judge instructed the jury that the attorneys were not witnesses in the case and therefore their statements and arguments were not evidence. Tr. at 12, 245; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002). This ineffectiveness claim is without merit. See Response at 20-22.

### K. Ground Ten

Petitioner claims that counsel was ineffective for failing to file a motion to suppress hearsay, inadmissible evidence (Curtis Parker's statement, in the police general offense report, that he had a worker named Charles who lived at 834 Garfield Street). Petitioner contends that this inadmissible, hearsay (Parker's statement) was adduced at trial. As noted by Respondents, Petitioner, in his Amended Petition, failed to provide a cite to the record; however, it appears that Petitioner is referencing the

cross-examination of Detective Parrott by defense counsel.  See Ex.

S.[11]

On cross-examination, the following colloquy ensued.

[DEFENSE COUNSEL]: Now you testified on direct, when you received this case the next day that you had the name Charles Palmer as part of the investigation?

[DETECTIVE PARROTT]: That's correct.

[DEFENSE COUNSEL]: That's not exactly correct.  You had the name Charles and you had an address.

[DETECTIVE PARROTT]: And I developed it from the address, the full name.  Using the address and the name Charles I came up with the name Charles Edward Palmer.

[DEFENSE COUNSEL]: Right.  So when you received the case and this general offense report, the general offense report only had the name Charles on it.

[DETECTIVE PARROTT]: That's right.

[DEFENSE COUNSEL]: With an address.

[DETECTIVE PARROTT]: Right.

[DEFENSE COUNSEL]: And it's you that did the investigation that put the name Palmer on the end of it.

[DETECTIVE PARROTT]: That's correct.

_____

[11] In Petitioner's amended Rule 3.850 motion, Petitioner contends, in ground thirteen, that defense counsel cross-examined Detective Parrott, who testified that he used information from the general offense report that led him to make up the photospread. Ex. S at 47.

> [DEFENSE COUNSEL]: And once you had the
> name Charles Palmer, you then made up a
> photospread, correct?
>
> [DETECTIVE PARROTT]: That's correct,
> ma'am.

Tr. at 216-17.

Defense counsel's performance was not deficient.  On direct examination, Detective Parrott affirmed that when he was assigned the case, he had the name Charles Palmer.  Id. at 204.  Defense counsel, on cross-examination, clarified exactly what information Detective Parrott had obtained from the police general offense report.  Further, even if defense counsel erred by failing to file a motion to suppress, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  See Response at 22-23.

### L. Ground Eleven

Petitioner claims that counsel was ineffective for failing to object to Detective Parrott's testimony concerning the photospread because information used to compile the photographs was inadmissible hearsay.  Specifically, Detective Parrott testified as follows on direct examination.

> [THE PROSECUTOR]: What did you do as
> your first means of your investigation?
>
> [DETECTIVE PARROTT]: As the first thing
> I did, I made up what is called a photospread

33

of Charles Edward Palmer and then I called the
two victims and set up an appointment to go to
their house and actually meet with them.

[THE PROSECUTOR]: And would you tell the
jury how it is that when you are preparing a
photospread you choose particular photographs?

[DETECTIVE PARROTT]: The photospread is
the target picture that you are looking at,
plus five other pictures that are very similar
in appearance in race, usually in complexion,
hairstyle, so that they look very similar in
appearance.

Tr. at 204-05.  The photospread was entered into evidence without

an objection by defense counsel.  Id. at 206.

Detective Parrott explained for the jury the standard

procedure used to display the photographs to the victims.  Id. at

206-10.  He further testified concerning the results of the

photospread.

In showing it to Ms. Joyce, who was the
first victim that I showed it to, she did
identify the photograph of Charles Edward
Palmer and said that he was the workman that
had done work on her house and the woman --
and the individual that had robbed them on the
night of June 25th.

. . . .

The mother.  During the time that I
showed it to the mother, I asked her to come
back into the living room area and out of the
bedroom, and I excluded the daughter then.
And I did the same procedure, showing her the
six photographs and asking her to lay them
down.

And she, too, upon conclusion of laying
the photographs down as described, indicated
that photo number five, that of Charles Edward

34

> Palmer, is the person that had robbed them the
> night of the 25th.

Id. at 207-08, 209.

Defense counsel's performance was not deficient because there were not any arguable grounds to exclude the testimony about the photo identification process where the process was not unduly suggestive or unfair.  Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided.  See Response at 23.

## VI. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Amended Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. #12) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this ___18th____ day of May, 2006.


*Howell W. Melton*

HOWELL W. MELTON
United States District Judge


sc 5/10
c:
Charles Edward Palmer
Ass't Attorney General (Wilcox)